**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TERRILL SWIFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 12cv9155 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, Chicago Police | ) | |
| Detectives KENNETH BOUDREAU, | ) | |
| RICHARD PALADINO, JAMES CASSIDY, | ) | JURY TRIAL DEMANDED |
| THE ESTATE OF THOMAS COUGHLIN, | ) | |
| WILLIAM FOLEY, F. VALADEZ, and P. | ) | |
| MCCAFFERTY, Chicago Police Sergeant L. | ) | |
| TULDIER, Cook County Assistant State's | ) | |
| Attorney TERENCE JOHNSON, COOK | ) | |
| COUNTY, ILLINOIS, and As-yet Unknown | ) | |
| City of Chicago Employees, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, TERRILL SWIFT, by his undersigned attorneys, complains against Defendants

CITY OF CHICAGO, Chicago Police Detectives KENNETH BOUDREAU, RICHARD

PALADINO, JAMES CASSIDY, THOMAS COUGHLIN, WILLIAM FOLEY, F. VALADEZ,

and P. MCCAFFERTY, Chicago Police Sergeant L. TULDIER, former Cook County Assistant

State's Attorney TERENCE JOHNSON, COOK COUNTY, ILLINOIS, and As-yet Unknown

City of Chicago Employees as follows:

### INTRODUCTION

1.      Terrill Swift spent nearly half of his life in prison for a crime he did not commit.

2.      Terrill was arrested at the age of 17 for the brutal rape and strangulation-murder

of a woman named Nina Glover, who was known to be involved in prostitution. Ms. Glover's

nude body was found in a dumpster, wrapped in a sheet, on the morning of November 7, 1994.

3.     Terrill Swift is innocent of this horrific crime. No physical evidence connected him to the murder. The sum total of the evidence against him was his false confession, which was fabricated and coerced by an Assistant State's Attorney and Chicago police detectives with a long and notorious history of similar acts of misconduct.

4.     Although Terrill and his four teenaged co-defendants all confessed to raping and murdering the victim, physical evidence, including DNA evidence, available at the time of Terrill's conviction excluded all five of them as the perpetrators of the murder. Furthermore, more recent DNA testing has revealed that the rape and murder was committed by a single perpetrator named Johnny Douglas, also known as "Maniac." At the time of Nina Glover's murder, Douglas was a 29-year-old convicted felon with a lengthy criminal history involving physical violence, who was at the crime scene the morning that Ms. Glover's body was discovered by the Chicago police. Neither Terrill nor any of his co-defendants (ranging in age from 15 to 18 years old) knew or had any association with Douglas.

5.     Although Douglas was known to the police at the time Nina Glover's body was discovered, the Defendants instead focused their attention on framing Terrill Swift and his co-defendants. Tragically, Douglas was allowed to remain free as a result. Douglas was later convicted of the strangulation-murder of a prostitute named Gytonne Marsh, charged with the strangulation-murder of another prostitute named Elaine Martin, and implicated in at least five other violent physical and sexual assaults of prostitutes between 1993 and 1997, one just weeks before Nina Glover's murder.

6.     The Defendants' egregious misconduct in the Glover investigation enabled them to secure wrongful convictions against Terrill Swift and three of his co-defendants. Terrill was sentenced to spend over 30 years in prison.

2

7.     Almost fifteen years after their convictions, Terrill Swift and his co-defendants were exonerated when DNA evidence confirmed that they were in fact innocent of the rape and murder. The Chief Judge of the Circuit Court of Cook County granted Terrill and each of his co-defendants a certificate of innocence on September 14, 2012.

8.     Just 17 years old when he was arrested, Terrill Swift spent fifteen years of his life incarcerated in maximum-security institutions, separated from his family and friends, and robbed of the most basic of freedoms. As a result of the Defendants' misconduct, he was imprisoned during his most formative years, when he would otherwise have been graduating from high school, pursuing a career, and starting a family.

9.     Plaintiff Terrill Swift files this civil rights action to bring the Defendants' misconduct to light, to ensure that they are held accountable for their actions, and to seek justice for the years of his life that he lost for a crime he did not commit.

## Jurisdiction and Venue

10.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

11.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

12.     Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein occurred in this judicial district and Defendant City of Chicago is a municipal corporation located here.

## The Parties

13.     Plaintiff Terrill Swift is 35 years old. At the time of the victim's murder, Terrill lived with his family in the Englewood area of Chicago. He was just 17 years old and enrolled in a high school program at Olive-Harvey College in Chicago, Illinois.

3

14.     At all relevant times, Defendants Kenneth Boudreau, Richard Paladino, James Cassidy, Thomas Coughlin, William Foley, F. Valadez, and P. McCafferty were detectives with the Chicago Police Department employed by Defendant City of Chicago and acting within the scope of their employment. They are sued in their individual capacities. Coughlin is deceased and, accordingly, his Estate is named as a party-defendant herein.

15.     At all relevant times, Defendant L. Tuldier was a sergeant with the Chicago Police Department employed by Defendant City of Chicago and acting within the scope of his employment. He is sued in his individual capacity.

16.     At all relevant times, Defendant Terence Johnson was an Assistant State's Attorney in the Cook County State's Attorney's Office. He is sued in his individual capacity.

17.     Defendants Boudreau, Paladino, Cassidy, Coughlin, Foley, Valadez, McCafferty, Tuldier, and as-yet Unknown City of Chicago Employees are referred to collectively as the "Defendant Officers."

18.     The Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

19.     Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of its Cook County State's Attorney's Office, and was at all relevant times the employer of Defendant Terence Johnson. Defendant Cook County is a necessary party to this lawsuit.

## The Murder of Nina Glover

20.     At approximately 7 a.m. on November 7, 1994, Nina Glover's nude body was discovered in a dumpster behind the Family Super Mart Liquor Store at 1400 W. Garfield

Boulevard. Her body was wrapped in a blood-stained bedsheet, along with her clothing and shoes. An autopsy revealed that Ms. Glover had been killed by strangulation.

21. Defendant Cassidy and other Chicago Police Department personnel were assigned to investigate the crime. When Defendant Cassidy arrived at the crime scene, four individuals identified themselves: the garbage truck driver who had discovered the body, an assistant manager for the liquor store, a neighborhood resident who lived around the corner, and Johnny Douglas.

22. Douglas was a convicted felon with a lengthy and violent criminal history—between July 1980 and April 1998, Douglas was arrested 83 times and convicted of crimes 38 times. Defendant Cassidy learned that Douglas did not live near the crime scene, and that he had no explanation for his presence in the alley on that early Monday morning.

23. Douglas was an obvious suspect in the murder, but the Defendant Officers never investigated this lead.

**The False Confessions**

24. Rather than pursuing Johnny Douglas, the Defendant Officers, in conspiracy with Defendant Johnson, manufactured "evidence" that falsely implicated Terrill Swift and his eventual co-defendants in the murder of Nina Glover. This fabrication of evidence included, but was not limited to, coercing a confession from Terrill Swift and unlawfully manipulating and coercing Jerry Fincher, Vincent Thames, Harold Richardson, and Michael Saunders to falsely implicate Terrill. The means employed to secure the false confessions of Fincher, Thames, Richardson and Sanders included deceit, intimidation, threats (both explicit and implicit), prolonged isolation from family and friends, and outright physical coercion. Those unlawful

means and other exculpatory evidence obtained in the investigation were never disclosed to Terrill or his defense counsel, before, during, or after Terrill's criminal trial.

25.     On the night of March 7, 1995, four months after Nina Glover was murdered, the Defendant Officers detained 18-year-old Jerry Fincher, who was standing on the street outside his home, a few blocks from the alley where Ms. Glover's body had been found. The Defendant Officers handcuffed Jerry, held him in their car at gunpoint, and took him to the Area One police station at 51st and Wentworth.

26.     Jerry Fincher was held in custody at the police station for nearly two days. Despite telling the Defendant Officers that he knew nothing about the crime, he was kept in handcuffs, forced to spend two sleepless nights in interrogation rooms, and threatened with physical violence. The Defendant Officers, including Defendant Valadez, fed Jerry details of the crime and told him that he would go to prison for the murder unless he cooperated. During the interrogation, one of the Defendant Officers placed a phone book against Jerry's chest and pounded the phone book with a flashlight in an effort to force him to confess. The Defendant Officers told Jerry that if he cooperated, he could go home.

27.     Over the course of those two days, Jerry Fincher gave a series of different confessions, which were wildly divergent from one another. Dissatisfied with the initial confessions, the Defendant Officers and Defendant Johnson continued to coerce Fincher and pressure him into giving a more "accurate" confession that implicated Terrill Swift and his eventual co-defendants. As a result of the Defendants' coercion, Jerry agreed to their fabrications in a final recorded statement, which Defendant Johnson obtained on March 9, 1995.

28.     In this final confession, the Defendant Officers provided Jerry with a false scenario where Jerry, along with other neighborhood teenagers, took Ms. Glover to a basement at

approximately 9 p.m. on November 6, 1994, gang raped and strangled her, and disposed of her body in the dumpster.

29.     The Defendant Officers also coerced Jerry Fincher into implicating four other teenagers in the murder: Harold Richardson, Vincent Thames, Michael Saunders, and Plaintiff Terrill Swift. All of these teenagers were innocent of Nina Glover's murder.

30.     The Defendant Officers and Defendant Johnson knew that Jerry's statement was coerced and false and merely a recitation of their fabrications. Nevertheless, the Defendant Officers used Jerry's coerced confession to arrest and interrogate Terrill, Harold, Vincent, and Michael.

31.     On March 9th, the Defendant Officers took Vincent Thames from his home and transported him to the police station, where he was handcuffed to the wall of an interrogation room. Vincent was 18 years old and living at home at the time of the murder. He had no experience with police interrogation.

32.     The Defendant Officers, including Defendants McCafferty, Cassidy, and Paladino, threatened Vincent that he would get natural life in prison unless he confessed to his involvement in Ms. Glover's murder. Over the course of several hours, the Defendant Officers pursued various measures to coerce Vincent into falsely confessing. Frightened by their threats, and believing the Defendant Officers' promises that they would release him if he adopted the Defendants' narrative of the crime, Vincent succumbed to their pressure.

33.     Like Jerry, Vincent gave multiple confessions over the course of his interrogation, each with a different account of Nina Glover's murder. Due to the Defendant Officers' coercion, on March 9, 1995, Vincent gave a final false confession, again recorded by Defendant Johnson, which implicated Jerry Fincher, Terrill Swift, Harold Richardson, and Michael Saunders.

34.     The Defendant Officers and Defendant Johnson knew that Vincent's statement was coerced and false and merely a recitation of their fabrications.

35.     Vincent Thames was innocent and had nothing to do with Ms. Glover's murder. He would not have falsely implicated himself but for the Defendant Officers' misconduct.

36.     That same day, on March 9, 1995, Chicago Police Officers, including Defendant Paladino, sought out Terrill Swift at his father's home. The officers falsely informed Terrill that they wanted him to come down to the police station because he was suspected of "hiding someone" of interest to the police. The Defendant Officers omitted any mention of their true motivation—to interrogate Terrill about Nina Glover's murder. Terrill's parents and family members were not permitted to accompany him. Instead, the Defendant Officers deliberately misled his family concerning where Terrill would be taken. The Defendant Officers informed Terrill's father and uncle that Terrill would be taken to the police station at 35th and Lowe; in fact, the Defendant Officers brought Terrill to Area One at 51st and Wentworth.

37.     Following this deception, the Defendant Officers and Defendant Johnson interrogated Terrill for hours outside the presence of a parent, guardian, or attorney. At the conclusion of that interrogation, Terrill falsely confessed to raping and murdering Nina Glover. That confession was involuntary in light of the totality of the circumstances surrounding the interrogation, including but not limited to the following:

        a.     Terrill was a teenager at the time of the interrogation. He lacked any prior experience with police interrogation. He was particularly vulnerable because he was easily led and highly suggestible.

b. While he was in custody, Terrill made repeated requests to contact his mother and consult an attorney. The Defendants denied his requests and proceeded with the interrogation.

c. The Defendant Officers, including Defendants Paladino, Boudreau, and Valadez, fed Terrill details of the murder and repeatedly instructed him to implicate himself in the crime.

d. These Defendants and Defendant Johnson made false promises of leniency, repeatedly assuring Terrill that he if he signed the confession they had concocted for him then he would be free to go home.

e. The Defendant Officers explicitly and implicitly made clear to Terrill that if he did not confess as they demanded, he would be forced to remain in their custody.

f. The Defendant Officers and/or Defendant Johnson employed further and additional manipulative and coercive techniques in order to obtain Terrill's confession.

38. The Defendant Officers and Defendant Johnson knew that Terrill's statement was coerced and false and merely a recitation of their fabrications.

39. Terrill was innocent of raping or killing Ms. Glover and would not have falsely implicated himself in these crimes if the Defendants had not deprived him of his free will by the coercion and misconduct described herein.

40. While he was in police custody, the Defendant Officers, including Paladino, Valadez, and Boudreau, took Terrill to the lagoon in Sherman Park, near the Glover crime scene. At the park, the Defendant Officers told Terrill to point somewhere toward the lagoon. Believing he would go home if he followed the Defendant Officers' instructions, Terrill pointed in the

9

direction of the lagoon. The Defendant Officers later produced a rusty shovel and a piece of wood, which they reported was recovered from the bottom of the lagoon. Though there was no physical evidence linking the shovel and wooden handle to Terrill or to the Glover crime scene, and though the lagoon bottom was littered with other, similar debris and garbage, the Defendant Officers contended that the shovel and wood handle were used in Nina Glover's murder. They also falsely reported that Terrill had told them where to find the implements. In actuality, Terrill's "identification" of the tools was coerced and concocted by the Defendant Officers.

41.     While Terrill was being interrogated, on the night of March 9, 1995, the Defendant Officers, including Defendants Foley and Boudreau, took 16-year-old Harold Richardson into custody. At the police station, the Defendant Officers, including Defendants Paladino, Cassidy, and Coughlin, interrogated Harold outside the presence of a parent, guardian, or a youth officer. They handcuffed him to the wall of an interrogation room, fed him details of Ms. Glover's murder, and told him that the other teenagers had implicated him. Though Harold repeatedly denied having any part in the crime, the Defendant Officers continued to pressure him to implicate himself, offering him false promises of leniency, and assuring him that they would release him if he provided a statement.

42.     As a result of hours of improper and undue pressure, conducted outside the presence of his parents or an attorney, Harold eventually agreed to falsely confess to the Defendant Officers' account of the Glover murder. In an oral statement, given to Assistant State's Attorney Fabio Valentini, Harold falsely implicated himself, Vincent Thames, Jerry Fincher, Terrill Swift, and Michael Saunders.

43.     The Defendant Officers knew that Harold's statement was coerced and false and merely a recitation of their fabrications.

44.     Harold Richardson was innocent and had nothing to do with Ms. Glover's murder. He would not have falsely implicated himself but for the Defendant Officers' misconduct.

45.     Fifteen-year-old Michael Saunders was the last to be arrested. On or around March 10, the Defendant Officers picked him up on the street, handcuffed him, and took him to the police station. Once there, the Defendant Officers interrogated him for hours, ignoring his requests for his mother and for an attorney.

46.     The Defendant Officers threatened Michael with physical harm, at one point ripping an earring out of his ear and threatening to take him to the railroad tracks behind the police station and shoot him.

47.      As a result of hours of coercion and threats, Michael eventually signed a statement falsely implicating himself, Vincent Thames, Jerry Fincher, Terrill Swift, and Harold Richardson. The statement was a fabrication, written entirely by Assistant State's Attorney Fabio Valentini. Michael signed the statement without reading it, believing that if he did so, he would be permitted to go home.

48.     The Defendant Officers knew that Michael's statement was coerced and false and merely a recitation of their fabrications.

49.     Michael Saunders was innocent and had nothing to do with Ms. Glover's murder. He would not have falsely implicated himself but for the Defendant Officers' misconduct.

50.     On the sole basis of the Defendants' coercions, fabrications, and failure to disclose exculpatory evidence, each of the teenagers, including Terrill, was charged with first degree murder and aggravated sexual assault.

**Forensic Evidence Excluded Terrill Swift as the Perpetrator**

51.     No physical or forensic evidence ever linked Terrill Swift or any of his co-defendants to the crime. In fact, the physical evidence indisputably excluded the teenagers.

52.     Reports from forensic labs produced prior to the time of the teenagers' trials revealed that the semen found on Nina Glover's vaginal swab could not have originated from Terrill or any of his co-defendants. Instead, DNA testing revealed a "single source" of DNA that did not match any of the teenage boys who were forced to confess to the murder.

53.     The Defendants were aware of this evidence. Nonetheless, the Defendants continued to misrepresent the circumstances under which they had obtained the statements from all five teenagers, concealing the coercion they had used and the fact that the information in the confessions had been fed to the teenagers by the Defendants. The Defendant Officers also failed to investigate other leads—such as Johnny Douglas, a man with a lengthy and violent criminal past who was inexplicably present at the crime scene the morning Nina Glover's body was discovered.

54.     Defendant Johnson, who took Terrill's confession as well as confessions from some of his co-defendants, and who was an active participant in the interrogations of Terrill and the other teenagers, knew that the statements were fabricated and that they contained contradictory and conflicting information. Nonetheless, Defendant Johnson concealed from the criminal court, Terrill's defense counsel, and the prosecutors who tried Terrill's case that each of these confessions was the unreliable products of coercion.

**Terrill Swift's Wrongful Conviction**

55.     In April and May 1998, Terrill Swift stood trial for the rape and murder of Nina Glover.

12

56. No physical evidence ever linked Terrill to the crime, and in fact, DNA testing affirmatively excluded him as the perpetrator. The prosecutors relied nearly exclusively on Terrill's false and coerced oral confession.

57. As a proximate result of the above-described misconduct on the part of the Defendants, Terrill Swift was convicted in a bench trial. In explaining his ruling, Judge Sumner acknowledged that the entirety of the State's case rested on Terrill's confession:

> "[T]his case is relatively simple. It's all a confession. The State's case is a confession. Without the confession, there is no case. Counsel for the defense is correct that there is no physical evidence whatsoever that links the defendant to the case. There is no other testimony that links him to the case. It's the confession."

58. When he found Terrill guilty, Judge Sumner did not know that Terrill's confession had been coerced by the Defendant Officers and Defendant Johnson. The Defendants who testified at Terrill's trial, including Defendant Paladino, Defendant Cassidy, and Defendant Johnson, did not admit that they had fabricated the confessions. Each of these Defendants took concerted steps to conceal the fact that Terrill's confession was false and the product of coercion by the police and Defendant Johnson.

59. Because the Defendants concealed from the judge, the trial prosecutors, and Terrill Swift and his attorney that they had fabricated the confessions of Richardson, Saunders and Thames, Terrill was unable to call these persons as witnesses who could testify that Terrill's confession, which alleged participation by Richardson, Saunders and Thames, was fabricated and false.

60. On June 2, 1998, Terrill Swift was sentenced to 36 years in prison. But for the Defendants' misconduct, Terrill would have been neither prosecuted nor convicted.

**The Other Teenagers Are Wrongfully Convicted**

61.     On the sole basis of their confessions, Harold Richardson and Michael Saunders were also convicted after bench trials. Both were sentenced to 40 years in prison. In light of the outcomes of his co-defendants' trials, which preceded his own, Vincent Thames pled guilty and was sentenced to 30 years in prison.

62.     Jerry Fincher's "confession" was deemed to be illegally obtained and excluded following a suppression hearing. Without any other evidence to convict him, the prosecutors dropped all charges against Jerry Fincher. He was released in 1998 after spending 3 ½ years in jail.

**Defendants' Pattern and Practice of Coercing False Confessions
In Order to Secure Wrongful Conviction**

63.     The Defendant Officers' misconduct in this case was no isolated aberration.

64.      Defendant Boudreau, for example, is one of the notorious homicide detectives who, under former Chicago Police Commander Jon Burge, had a lengthy history of physically and psychologically coercing suspects, including juveniles and teenagers, to "confess" to serious violent crimes, including murder, and Defendant Cassidy has a similarly notorious history of coercing and manufacturing confessions from juveniles as young as 7 years old.

65.     The Chicago Police Department and its detectives and police officers have a long history of using physically and psychologically coercive interrogation tactics in order to elicit statements from suspects in criminal cases, which has caused false confessions and led to wrongful convictions.

66.     Additionally, the CPD and its detectives and officers have routinely failed to disclose to competent authorities that they have coerced confessions from criminal suspects.

67. The Chicago Police Department frequently used these coercive and abusive tactics to target teenagers, such as Swift, Saunders, Richardson, Thames, and Fincher, who are particularly susceptible to such coercion. There are many cases already documented in which the CPD has coerced individuals into confessing, and there are undoubtedly many more such cases that have not yet been discovered.

68. The wrongful conviction of persons who gave coerced and false confessions includes numerous cases in which Chicago Police Detectives used tactics identical or similar to those that the Defendants employed against Terrill Swift in this case. These tactics include: (a) psychological intimidation and manipulation; (b) the use of clearly unreliable or coerced informants and/or witnesses; (c) the fabrication of confessions; (d) the misleading of parents and denial to parents of access to their children during interrogations; (e) the denial of access to counsel; (f) the concealment of exculpatory information; (g) false promises of leniency in exchange for "cooperation" in the form of a confession; and (h) the use of other unlawful tactics to secure the arrest, prosecution, and conviction of persons, including juveniles and teenagers, without regard to their actual guilt or innocence of the offense.

69. At the time of the events leading to Terrill Swift's coerced confession and wrongful conviction, members of the Chicago Police Department systematically promoted the malicious prosecution of teenagers and other vulnerable individuals by using abusive and coercive interrogation tactics to force them to confess to crimes. Law enforcement officers know that youth are inherently more suggestible, vulnerable to manipulation, and frequently lack the ability to fully understand—let alone assert—their rights during an interrogation.

70. As a matter of widespread custom and practice, Chicago Police Department Detectives, including but not limited to the Defendant Officers, exploited the vulnerability and

suggestibility of the youth in their custody in order to obtain false confessions and close open cases. Detectives systematically denied juvenile and teenage suspects access to their parents and to counsel, fed them details of the crime, made false promises of leniency, and generally subjected these teenagers to immense physical and psychological pressure until they "confessed."

### Terrill Swift's Exoneration

71.     Throughout his prosecution and incarceration, Terrill Swift continued to maintain his innocence and pursued all possible avenues to prove it.

72.     Terrill served the entirety of his prison sentence and was released on parole as a convicted sex offender in May 2010.

73.     On December 3, 2010, Terrill Swift and Michael Saunders filed a motion for post-conviction DNA testing, which was later joined by Harold Richardson.

74.     Over the State's objections, Cellmark Laboratories in Dallas, Texas conducted the DNA testing and obtained a single male DNA profile from the vaginal swab extracts collected from Ms. Glover post-mortem.

75.     On May 13, 2011, the Illinois State Police submitted the DNA profile to the Combined DNA Index System (CODIS) database, which returned a match to the DNA profile of Johnny Douglas, the 29-year-old convicted felon who was present when Nina Glover's body was found in the early morning hours of November 7, 1994. The DNA match was particularly significant given that Douglas informed the responding detectives at the Glover crime scene that he did not know the victim.

16

76. Because Mr. Douglas was not brought to justice for Ms. Glover's murder, he was free to commit other strikingly similar strangulation-murders of prostitutes in the area. Mr. Douglas was himself murdered in 2008.

77. On May 29, 2011, Terrill Swift and his co-defendants filed a joint petition to vacate their convictions. The Circuit Court of Cook County granted the joint petition on November 16, 2011. Shortly thereafter, on January 17, 2012, the Cook County State's Attorney's Office agreed to *nolle prosequi* future charges.

78. On September 14, 2012, the Chief Judge of the Circuit Court of Cook County granted Terrill Swift a certificate of innocence.

### Terrill Swift's Damages

79. Terrill Swift spent 15 years in prison and over a year on parole as a convicted sex offender for a crime he did not commit. He must now attempt to make a life for himself outside of prison without the benefit of nearly two decades of life experiences—including his adolescence and young adulthood—which normally equip adults for that task.

80. Additionally, the emotional pain and suffering caused by losing these formative years has been substantial. Terrill was taken from his close-knit family when he was just 17 years old. During his incarceration, he was stripped of the basic pleasures of human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the opportunity to graduate from high school with his friends, to share holidays, births, funerals, and other life events with loved ones, the opportunity to have girlfriends, to fall in love, to marry, and to pursue a career, and the fundamental freedom to live his life as an autonomous human being.

81.     As a result of the foregoing, Terrill Swift has suffered tremendous damage, including but not limited to physical harm, mental suffering, and loss of a normal life, all proximately caused by Defendants' misconduct.

## Count I – 42 U.S.C. § 1983
## Violation of Due Process

82.     Each paragraph of this Complaint is incorporated as if restated fully herein.

83.     As described more fully above, all of the Defendants, acting individually, jointly, and/or in conspiracy, deprived Terrill Swift of his constitutional right to due process and to a fair trial.

84.     In the manner described more fully above, the Defendants and/or other City of Chicago and Cook County employees and their agents coerced and fabricated confessions, deliberately withheld and suppressed exculpatory evidence, and fabricated false reports and other evidence, thereby causing the wrongful prosecution of Terrill Swift. Absent this misconduct, the criminal prosecution Terrill Swift could not and would not have been pursued.

85.     The Defendants' misconduct directly resulted in the unjust criminal conviction and continuing wrongful incarceration of Terrill Swift, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

86.     As a result of this violation of his constitutional right to a fair trial, Terrill Swift suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress and anguish, and financial damages.

87.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Terrill's clearly established constitutional rights.

## Count II – 42 U.S.C. § 1983
## Coercive Interrogation

88.     Each paragraph of this Complaint is incorporated as if restated fully herein.

89.     In the manner described more fully above, the Defendants, acting individually, jointly, and in conspiracy, interrogated Terrill Swift using coercive measures, which caused Terrill to give involuntary, false, and fabricated admissions in violation of his Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law.

90.     The actions of the Defendants in using coercive techniques to interrogate Terrill Swift were the direct and proximate cause of Terrill's injuries and damages, including but not limited to loss of liberty, physical harm, and emotional distress, as more fully set forth above.

91.     These Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Terrill's clearly established constitutional rights.

## Count III – 42 U.S.C. § 1983
## Failure to Intervene

92.     Each paragraph of this Complaint is incorporated as if restated fully herein.

93.     In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Terrill Swift's constitutional rights, even though each of them had the opportunity to do so.

94.     As a result of the Defendants' failure to intervene to prevent the violation of Terrill's constitutional rights, Terrill suffered physical harm, severe emotional distress and anguish, and financial damages. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

95.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Terrill's constitutional rights.

### Count IV – 42 U.S.C. § 1983
### Conspiracy to Deprive Plaintiff of His Constitutional Rights

96.     Each paragraph of this Complaint is incorporated as if restated fully herein.

97.     After the murder of Ms. Glover, the Defendants, acting within the scope of their employment and under color of law, agreed among themselves and with other individuals to act in concert in order to deprive Terrill Swift of his constitutional rights, including his rights to due process and to a fair trial, all as described in the various paragraphs of this Complaint.

98.     Additionally, before and after Terrill's conviction, the Defendants further conspired to deprive Terrill of exculpatory information to which he was lawfully entitled and which would have led to either his not being charged, his acquittal, or his more timely exoneration.

99.     In this manner, the Defendants, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

100.     In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above—such as fabricating evidence, withholding exculpatory evidence, and coercing false confessions—and was an otherwise willful participant in joint activity.

101.     As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Terrill's rights were violated, and he suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress.

102.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Terrill's rights.

### Count V – 42 U.S.C. § 1983
### Supervisory Liability

103.    Each paragraph of this Complaint is incorporated as if restated fully herein.

104.    The unfair trial, wrongful conviction, and continued wrongful detention of Terrill Swift were caused by the deliberate indifference and recklessness of supervisory defendants, including but not limited to Defendant Tuldier, when they failed to adequately train and supervise the individual Defendant Officers.

105.    Specifically, these supervisory defendants were personally involved in the unconstitutional investigation of Terrill Swift or, at the very least, were deliberately and recklessly indifferent to their subordinates' unconstitutional actions and related misconduct in the case.

106.    Furthermore, these supervisory defendants failed to supervise the individual defendants in constitutionally adequate law enforcement practices, particularly those which concerned interviewing suspects and the production of exculpatory evidence, thereby encouraging and/or permitting these employees and other defendants to coerce and fabricate false inculpatory evidence and to withhold exculpatory and impeachment evidence, which caused the constitutional deprivations suffered by Terrill Swift.

107.    The coercive interview techniques, failures in producing exculpatory evidence, fabrications, and other investigative procedures that occurred in this case were contrary to accepted methods used by law enforcement agencies. The fact that the defendant supervisors failed to train and supervise their subordinates to ensure that they employed proper investigation

procedures demonstrates deliberate indifference and reckless disregard for Terrill's constitutional rights.

108.    The personal involvement of the defendant supervisors, through their actions and omissions, proximately and directly caused the constitutional deprivations and grievous personal injuries suffered by Terrill, including the above-mentioned injuries and damages.

109.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Terrill's clearly established constitutional rights.

### Count VI – 42 U.S.C. § 1983
### *Monell* Policy Claim

110.    Each paragraph of this Complaint is incorporated as if restated fully herein.

111.    The actions of all the individual Defendants were undertaken pursuant to policies and practices of the Chicago Police Department, described above and below, which were ratified by policymakers for the City of Chicago with final policymaking authority.

112.    At all times material to this complaint, the Defendant City of Chicago through its Police Department, Police Superintendents, Police Board, Mayor, City Council and/or Corporation Counsel's Office had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

    a.  conducting physically, psychologically, or otherwise illegal or improperly coercive interrogations of witnesses, suspects and arrestees, including the use of torture techniques, in order to obtain confessions;

    b.  using these coercive techniques to obtain confessions from juveniles and teenagers;

    c.  manufacturing, fabricating, and/or using improper suggestive tactics to obtain statements from suspects and witnesses, particularly juveniles or teenagers;

    d.  filing false reports, and giving false statements and testimony about the interrogations, confessions, and witness statements, suppressing evidence

concerning the interrogations and confessions, pursuing and obtaining prosecutions and imprisonments on the basis of confessions obtained during the interrogations, and otherwise covering up the true nature of the interrogations, confessions, and witness statements;

e.  failing to video and/or audio tape the interrogation or questioning of suspects, arrestees, and witnesses, particularly in the circumstances set forth in a through c, above;

f.  failing to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control police officers, particularly those who were repeatedly accused of physically, psychologically, or otherwise illegally or improperly engaging in coercive questioning or interrogation of witnesses, suspects and arrestees; of torture and related physical abuse of suspects; of false arrests, wrongful imprisonments, malicious prosecutions, and wrongful convictions; and/or of making false reports and statements. This failure to properly train, supervise, discipline, transfer, monitor, counsel, and/or otherwise control specifically includes the "repeater" Defendants named herein, including, but not limited to, Defendants Cassidy and Boudreau, who have been accused on numerous occasions of such misconduct;

g.  the police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs a through d, above, whereby police officers refused to report or otherwise covered up instances of police misconduct, and/or fabricated, suppressed, and/or destroyed evidence of which they were aware, despite their obligation under the law and police regulations to so report. This code of silence also has resulted in police officers either remaining silent or giving false and misleading information, and/or testimony during official investigations and grand jury proceedings in order to protect themselves and/or fellow officers from internal discipline, civil liability, or criminal charges, and perjuring themselves in criminal cases where they and/or their fellow officers have been accused of misconduct.

113.    The interrelated pattern and practices alleged above were or should have been well-known within the Chicago Police Department, both before and after Terrill Swift was interrogated and wrongfully convicted, as well as by successive mayors, police superintendents and OPS directors, and by the Chicago City Council and the Chicago Police Board, and other policy-making, command, and supervisory City and police personnel, who participated in the cover-up and/or continuation of the policies and practices.

114.    The interrelated policies, practices, and customs set forth above, both individually and together, were maintained and implemented with deliberate indifference. They encouraged, *inter alia*, the coercing of statements from suspects, witnesses, and arrestees, particularly from juveniles and other teenagers; the construction and fabrication of confessions, admissions, statements, and other false witness evidence; the suppression and destruction of exculpatory evidence, the intimidation of witnesses, the making of false statements and reports, the giving of false testimony, and the obstruction of justice; and the pursuit and continuation of wrongful convictions and false arrests and imprisonments. The interrelated policies, practices and customs set forth above were, separately and together, a direct and proximate cause (*i.e.* a moving force) of the unconstitutional acts and perjury committed by the named Defendants and their co-conspirators, and the injuries suffered by Terrill Swift, including his wrongful conviction and imprisonment.

115.    Additionally, the City of Chicago's failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel the Defendant Officers, including but not limited to Defendants Cassidy and Boudreau, was also done with deliberate indifference and likewise acted as a direct and proximate cause (*i.e.* a moving force) of the injuries to Terrill Swift.

## Count VII – State Law Claim
## Malicious Prosecution

116.    Each paragraph of this Complaint is incorporated as if restated fully herein.

117.    The Defendant Officers, despite knowing that probable cause did not exist to arrest and prosecute Terrill Swift for the rape and murder of Nina Glover, acted individually, jointly, and/or in concert and in conspiracy, to cause Terrill to be arrested and prosecuted for that crime. The Defendant Officers made statements to prosecutors with the intent of exerting influence and to institute and continue the unjust judicial proceedings.

118. Specifically, the Defendant Officers were aware that, as described more fully above, no true or reliable evidence implicated Terrill Swift in the Glover rape/murder, all inculpatory evidence was coerced and fabricated, and forensic evidence indicated Terrill's innocence. Furthermore, the Defendant Officers intentionally withheld from and misrepresented to prosecutors and the grand jury facts that further vitiated probable cause against Terrill, as set forth above, and failed to investigate evidence which would have led to the actual assailant. The Defendant Officers performed the above-described acts deliberately, with malice, and with reckless disregard for Terrill's rights.

119. On November 16, 2011, Terrill's conviction was vacated, and in January 2012, the Cook County State's Attorney's Office *nolle prossed* his case, which constitutes a termination of the criminal proceedings in his favor. On September 14, 2012, Terrill was granted a Certificate of Innocence by the Chief Judge of the Circuit Court of Cook County.

120. As a direct and proximate result of this misconduct, Terrill sustained, and continues to sustain, injuries as set forth above, including pain and suffering.

### Count VIII – State Law Claim
### Intentional Infliction of Emotional Distress

121. Each paragraph of this Complaint is incorporated as if restated fully herein.

122. The acts and conduct of the Defendants as set forth above were extreme and outrageous. The Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Terrill Swift, as is more fully alleged above.

123. As a direct and proximate result of the Defendants' actions, Terrill suffered and continues to suffer severe emotional distress.

## Count IX – State Law Claim
## Civil Conspiracy

124.     Each paragraph of this Complaint is incorporated as if restated fully herein.

125.     As described more fully in the preceding paragraphs, the Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

126.     In furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Terrill Swift and the intentional infliction of emotional distress upon him.

127.     The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

128.     As a direct and proximate result of the Defendants' conspiracy, Terrill suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

## Count X – State Law Claim
## Respondeat Superior

129.     Each paragraph of this Complaint is incorporated as if restated fully herein.

130.     In committing the acts alleged in the preceding paragraphs, each of the Defendant Officers were members of, and agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment and under color of law.

131.     Defendant City of Chicago is liable as principal for all torts in violation of state law committed by its agents.

## Count XI – State Law Claim
## 745 ILCS 10/9-102 and Common Law Claim Against City of Chicago and Cook County

132.     Each paragraph of this Complaint is incorporated as if restated fully herein.

133.   Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

134.   The Defendant Officers are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described herein.

135.   Defendant Johnson was at all times material to this complaint the employee of the Cook County State's Attorney's Office, and Cook County is therefore responsible for any judgment entered against Defendant Johnson and for any judgment entered against him arising from said employment with the County, making the County a necessary party to this complaint.

WHEREFORE, Plaintiff, TERRILL SWIFT, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, Chicago Police Department Detectives KENNETH BOUDREAU, RICHARD PALADINO, JAMES CASSIDY, ESTATE OF THOMAS COUGHLIN, WILLIAM FOLEY, F. VALADEZ, and P. MCCAFFERTY, Chicago Police Sergeant L. TULDIER, former Cook County Assistant State's Attorney TERENCE JOHNSON, COOK COUNTY, ILLINOIS, and as-yet unknown City of Chicago Employees, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, TERRILL SWIFT, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**TERRILL SWIFT**


By: /s/ Alexa Van Brunt
        One of his attorneys


Locke E. Bowman                          G. Flint Taylor
Alexa Van Brunt                          John L. Stainthorp
Roderick MacArthur Justice Center        Jan Susler
Northwestern University School of Law    People's Law Office
357 E. Chicago Avenue                    1180 N. Milwaukee Avenue
Chicago, Illinois  60611                 Chicago, Illinois 60642
 (312) 503-0844                          (773) 235-0070

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
357 E. Chicago Avenue
Chicago, Illinois  60611
(312) 503-4808